### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**MARCUS TYRONE BROADNAX,**

    Petitioner,

v.                                          Case No. 3:17cv367-MCR/CAS

**JULIE JONES, Secretary,**
**Florida Department of Corrections,**

    Respondent.

_____/

## AMENDED REPORT AND RECOMMENDATION

On February 1, 2017, Petitioner Marcus Tyrone Broadnax filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  On March 30, 2018, Respondent filed a motion to dismiss the petition as untimely, with exhibits.  ECF No. 17.[1]  On June 4, 2018, Petitioner filed a motion for extension of time to file a reply, which was granted.  ECF No. 22; *see* also ECF No. 23. Petitioner filed a reply on June 12, 2018, with exhibits.  *See* ECF No. 24.

---

[1] Respondent filed this motion for untimeliness after five (5) Motions for Extension of Time to File Response/Reply. *See* ECF Nos. 8, 10, 12, 14, 16.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).

## PROCEDURAL BACKGROUND

According to the Fourth Amended Information, filed October 7, 2011, Petitioner was charged with robbery while armed with a firearm and wearing a mask (Count 1), possession of a firearm by a convicted felon (Count 2), two counts of aggravated assault by threat with a firearm (Count 3 and Count 4), tampering with a witness, victim or informant (Count 5), solicitation to commit perjury (Count 6), and introducing contraband article into a county detention facility (Count 7). Ex. A at 7-8.[2] Petitioner was charged with Counts 1-4 in connection with events that occurred on or about June 26, 2010. *Id.* Petitioner was charged with Counts 5-7 in connection with events that occurred between June 29, 2010, and December 6, 2010, while Petitioner was awaiting trial for Counts 1-4. *Id.* These charges were severed and tried separately: Counts 1-4 were tried on July 1, 2011, and Counts 5-7 were tried on November 9, 2011. *See* Ex. G at 81-84, 91; Ex. A at 295.

---

[2] Hereinafter, all citations to the state court record, "Ex.-," refer to exhibits submitted with Respondent's motion to dismiss, ECF No. 17.

Case No. 3:17cv367-MCR/CAS

On July 1, 2011, in the first trial, Petitioner was tried and convicted of Counts 1, 3, and 4. Ex. G at 76-78.[3] The State announced a Nol Pros as to Count 2. Ex. G. at 98. On August 30, 2011, Petitioner was sentenced to life without parole as to Count 1, 5 years to run concurrently as to Count 3, and time served as to Count 4. *Id.* at 94-98; *see also* Ex. A at 224. In his second trial, Petitioner was convicted of Counts 6 and 7. Ex. A at 317. The Court granted the defense's motion for judgment of acquittal as to Count 5. *Id.* at 323. On November 15, 2011, Petitioner was sentenced to 40.425 months in prison for each count. *Id.* at 320.

Petitioner filed a direct appeal of the judgment and sentence imposed on Counts 6 and 7 to the First District Court of Appeal (First DCA) on November 17, 2011. Ex. A at 327.[4] On February 1, 2012, Petitioner filed an amended notice to appeal the judgments of counts 1, 3, and 4. Broadnax v. State, 77 So. 3d 252 (Fla. 1st DCA 2012). Petitioner's convictions and sentences in both cases were per curiam affirmed without a written opinion on February 11, 2013, and the mandate issued February 27, 2013. Ex. F.

---

[3] Petitioner was convicted of a lesser included offense of Improper Exhibition of a Weapon as to Count 4. *See* Ex. G at 77.

[4] Petitioner was granted a belated appeal by the First DCA for the judgment as to Counts 1, 3, and 4 rendered August 30, 2011. Broadnax v. State, 77 So. 3d 252 (Fla. 1st DCA 2012).

On February 27, 2014, Petitioner mailed a motion for post-conviction relief to the state trial court in accordance with Florida Rule of Criminal Procedure 3.850.  Ex. L at 1-9.  Petitioner amended the motion several times and submitted the final version on February 5, 2015.  *Id.* at 46-65.  The state trial court denied Petitioner's motions for post-conviction relief on February 27, 2015.  *Id.* at 67-74.  The court rejected several of Petitioner's claims as facially insufficient and some had been available for review on direct appeal; therefore, relief could not be granted.  *Id.*

The First DCA received Petitioner's pro se notice of appeal from the order denying his motion for post-conviction relief on Tuesday, March 31, 2015, the day after the appeal period expired.  Ex. L at 133.  On April 13, 2015, the First DCA issued an order to show cause for untimeliness.  Ex. M.  Petitioner responded on April 22, 2015, and the court dismissed the appeal per curiam without an opinion on May 15, 2015.  Exs. N and O.  Petitioner filed a motion for rehearing on June 1, 2015, which was denied on June 29, 2015.  Ex. O at 2.  Petitioner then filed an amended motion for rehearing on July 10, 2015, which was denied on August 13, 2015.  *Id.* at 8.

On July 24, 2015, the Florida Supreme Court denied Petitioner's Notice to Invoke Discretionary Jurisdiction after the Court determined it was without jurisdiction.  *Id.* at 10.  Similarly, the Florida Supreme Court rejected

the amended Notice to Invoke Discretionary Jurisdiction on September 11, 2015. *Id.* at 11.[5]

On July 28, 2015, Petitioner filed a Petition for Writ of Habeas Corpus in the state trial court. Ex. P at 1-27. The petition raised several claims of newly discovered evidence. *Id.* On November 24, 2015, the state trial court denied the petition for writ of habeas corpus because the claims were "in many cases repetitive of claims already addressed by the Court." *Id.* at 29.

On December 7, 2015, Petitioner appealed the order denying his petition for writ of habeas corpus. *Id.* at 40. The First DCA per curiam affirmed the decision without a written opinion on September 20, 2016. Ex. S at 1. Petitioner's subsequent Motion for Rehearing and Motion for Clarification were denied on December 19, 2016. *Id.* at 1-7. The First DCA issued a mandate on January 4, 2017, following the Florida Supreme Court's refusal to Invoke Discretionary Jurisdiction. *Id.* at 8-11. As indicated above, Petitioner filed a petition for writ of habeas corpus in this

---

[5] Respondent notes in his Motion to Dismiss that "Petitioner's attempts at invoking jurisdiction in the Florida Supreme Court do not toll the time" because the attempts were dismissed as unauthorized. ECF No. 17. This Report does not address these motions further because they do not affect the one-year limitations period.

Case No. 3:17cv367-MCR/CAS

Court on February 1, 2017.  ECF No. 1.  Respondent has filed a motion to dismiss the § 2254 petition as untimely.  ECF No. 7.

## ANALYSIS

### Timeliness

Petitioner has filed a petition for writ of habeas corpus under Title 28, United States Code, section 2254.  ECF No. 1.  Pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), "a 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."  28 U.S.C. § 2244(d)(1).  The limitations period generally begins on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  *Id*.  Some cases call for later commencement dates, which may begin on (B) the date on which an unconstitutional impediment which prevented the applicant from filing is removed, (C) the date on which a right, if recently recognized by the Supreme Court, is made retroactively applicable to cases on collateral review, or (D) the date on which facts of the claims presented could have been discovered through due diligence.  *Id.* § 2244(d)(1)(B-D).  When a proper application for post-conviction relief has been filed with the State court, time will be tolled while the claim is pending.  *Id.* § 2244(d)(2).

On August 30, 2011, the state trial court sentenced Petitioner for Counts 1, 3, and 4. Ex. G at 98. On November 15, 2011, Petitioner was sentenced for Counts 6 and 7. Ex. A at 323. Petitioner filed a direct appeal to the First DCA on November 17, 2011, for Counts 6 and 7. Ex. A at 327. The Court allowed Petitioner to file a belated appeal to include counts 1, 3, and 4. Broadnax v. State, 77 So. 3d 252 (Fla. 1st DCA 2012). On February 11, 2013, the First DCA per curiam affirmed Petitioner's convictions and judgments without a written opinion. Ex. F.

Petitioner's convictions became final Monday, May 13, 2013, when the ninety (90)-day period to seek review in the United States Supreme Court expired. *See* Sup. Ct. R. 13 (2013) (providing that petition for writ of certiorari is timely when filed "within 90 days after entry of the order denying discretionary review"); *see also* Clifton v. Sec'y, Dep't of Corr., No. 06-61236-CIV, 2012 WL 3670264, n.3 (M.D. Fla. Aug. 27, 2012) (stating Supreme Court of Florida does not have jurisdiction over per curiam decisions on direct appeal, therefore "filing a petition for writ of discretionary review with the Supreme Court of Florida would be futile, [and] Petitioner was not required to file such a petition to toll the one-year limitations period for ninety days").

Without tolling, the AEDPA limitations period would have expired one year later, on Tuesday, May 13, 2014.  See <u>Ferreira v. Sec'y, Dept of Corr.</u>, 494 F.3d 1286, 1289 n.1 (11th Cir. 2007) (stating that limitations period ends on anniversary date of triggering event).  Petitioner filed a post-conviction motion in the state trial court on February 27, 2014.  Ex. L at 1-9.  At this point, the limitations period had run for 290 days: the time between May 13, 2013, and February 27, 2014, when Petitioner filed the 3.850 motion.  *Id.*  The state trial court denied the motion on the merits a year later, on February 27, 2015.  Ex. L at 67-74.  The limitations period continued to be tolled until Monday, March 30, 2015, when the thirty (30)-day period to seek review from the First DCA expired.  See 28 U.S.C. § 2244(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."); *see also* <u>McMillan v. Sec'y, Dep't of Corr.</u>, 257 F. App'x 249 (11th Cir. 2007) (stating that application is pending until time to seek appellate review expires and "includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal").

The First DCA received Petitioner's notice of appeal on March 31, 2015, and issued an order to show cause for untimeliness. Ex. M. Petitioner responded and the First DCA per curiam dismissed the appeal without a written opinion on May 15, 2015. Exs. N and O. Respondent states the untimely appeal "prohibits [Petitioner] from including as tolling the statute of limitation, the period between the expiration of the time for filing a notice of appeal and the date his untimely appeal was dismissed." ECF No. 17 at 4.

As a result, according to Respondent, the appeal and Petitioner's subsequent motions for rehearing did not toll the AEDPA one-year period and the clock ran for 119 days. *See* Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) ("For these reasons, we hold that time limits, no matter their form, are 'filing' conditions. Because the state court rejected petitioner's PCRA petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2)."). The limitations period continued to run until Petitioner filed a petition for writ of habeas corpus in the state trial court on July 28, 2015. Ex. P at 1-27. The AEDPA limitations period tolled until January 4, 2015, when the First DCA issued its mandate in the appeal following the denial of the state habeas petition. *See* Lawrence v. Florida, 549 U.S. 327, 332 (2007) ("After the State's highest court has

issued its mandate or denied review, no other state avenues for relief remain open. And an application for state post-conviction review no longer exists."). Petitioner filed this § 2254 petition thirty-seven (37) days later, on February 1, 2017. ECF No. 1. At the time of filing, 446 days had elapsed and the petition was untimely.

## Equitable Tolling

Petitioner is not entitled to statutory tolling under § 2244(d)(2), but these circumstances are sufficient to equitably toll the limitations period. *See* Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005). Respondent indicates Petitioner is not entitled to equitable tolling. ECF No. 17 at 4-7. If Petitioner's appeal from the denial of his Rule 3.850 motion had been considered timely, then his § 2254 petition would be timely. The one-year limitation established in Section 2244(d) is not jurisdictional and, as a consequence, "is subject to equitable tolling in appropriate cases." Holland v. Florida, 560 U.S. 631, 645 (2010). Petitioner may be entitled to equitable tolling of the one-year statute of limitations on a petition for federal habeas relief if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *See* Holland, 560 U.S. at 632 (quoting Pace, 544 U.S. at 418). Petitioner must meet both requirements. To satisfy the second requirement,

Petitioner must show "extraordinary circumstances that are both beyond [petitioner's] control and unavoidable even with diligence." Sandvik v. U.S., 177 F.3d 1269, 1271 (11th Cir. 1999).

A critical issue, then, is the effect of the appeal from the state court's denial of Petitioner's post-conviction motion received by the First DCA on March 31, 2015, one day after Petitioner's appeal period expired. Ex. L at 133 (stamp from Clerk of Court reading March 31, 2015). Though Petitioner provided evidence that he relinquished control of his notice of appeal before the March 30, 2015, deadline, the First DCA dismissed the appeal as untimely, pursuant to Rivera v. Dep't of Health, 177 So. 3d 1 (Fla. 1st DCA 2015). In Rivera, the Court held the presumptive filing date for a petition filed by a pro se inmate is the date the document was received by the clerk of court unless (a) the institution has no system for handling legal mail, or (b) it has a system that does not record the date when the document is handed to the correctional officials. *Id.*

In Petitioner's case, the Union Correctional Institution (UCI), where he was incarcerated at the time he submitted his notice of appeal, has a system for handling legal mail and the system records the date the inmate places the document in the correctional official's hands for mailing. *See* Ex. L at 10 (stamp indicating that Union Correctional Institution received the

motion for mailing on March 13, 2014); *see also* Fla. R. App. P. 9.420(a)(2)(B)(ii).  Rule 9.420 provides "when the institution has a system designed for legal mail that records the date a document is placed in the hands of an institution official for mailing and the inmate uses that system, then the date of filing will be presumed to be the date recorded by the institution's legal mail system."  *Id.*  UCI records outgoing legal mail using a stamp that bears the name of the institution and the date on which the inmate hands the legal mail to a correctional official.  *See* Ex. L at 10 (stamp indicating that UCI received the motion for mailing on March 13, 2014).

In his notice of appeal, Petitioner included a certificate of service dated March 26, 2015.  Ex. L at 134.  Unfortunately, Petitioner's notice of appeal and certificate of service were not stamped by a correctional official.  Therefore, the First DCA, in dismissing the appeal, may have determined that Petitioner did not satisfy the Rivera requirements for the mailbox rule and, accordingly, presumed Petitioner filed the appeal on March 31, 2015, when it was date stamped as received by the clerk of court.  Rivera, 177 So. 3d at 1.

Petitioner pursued his rights diligently.  He filed an appeal that, except for the absence of an institutional stamp, would have tolled the

federal limitations period. Petitioner has provided evidence that he relinquished control of his notice of appeal before the March 30, 2015, deadline. Ex. O. Petitioner's "Exhibit E" is a copy of Petitioner's Legal Postage Obligations for March 26, 2015. *Id.* at 5. The chart lists six postage charges to Petitioner's account on March 26 as well as the recipients, which correspond with the recipients on Petitioner's notice of appeal. *Id.* The postage stamp on the envelope addressed to the clerk of the court also indicates that the petition was mailed from UCI on March 27, 2015. *Id.* at 8.

Additionally, Petitioner complied with the certificate of service requirements. *See* Fla. R. App. P. 9.420(d)(1). The certificate of service states: Marcus Tyrone Broadnax certified the Notice of Appeal was placed in the hands of a correctional official at Union Correctional Institution (UCI) for service through the U.S. Mail on March 26, 2015. Ex. N at 2. Petitioner completed this certificate of service, had it notarized by an institutional official, and handed the notice of appeal to institutional officials on March 26, 2015, as noted by the Legal Postage Obligation form attached to his amended motion. Ex. O at 5*.*

A motion is presumed to have been filed on the date that it is notarized. *See* Rector v. State*,* 668 So. 2d 1104 (Fla. 4th DCA 1996) ("[A]

Rule 3.850 motion that is notarized on a certain date is deemed to have been filed on that date."); Olkewicz v. State, 633 So. 2d 1132 (Fla. 4th DCA 1994) (holding appellant's post-conviction motion not untimely when notarized by a prison employee three days before deadline); *see also* Fla. Admin. Code R. 33-210.102(11) ("Each document presented by an inmate for notarization and mailing which legally requires notarization shall be notarized and mailed immediately subject to the following conditions . . . Such employees shall not accept any document for notarization until the inmate indicates that he is ready for it to be mailed or forwarded.").

UCI's failure to stamp Petitioner's notice of appeal was an extraordinary circumstance beyond Petitioner's control. Petitioner relied on the correctional officials to stamp and mail his notice of appeal in a timely manner. Though the First DCA presumed under Rivera that March 31, 2015, was the date on which the notice of appeal was filed due to the clerk of the court's stamp, this presumption undermines the purpose of the 2014 amendment to the Rule 9.420(a)(2).

In 2014, the rule was rewritten, according to its notes, to comply with the Florida Supreme Court's holding in Thompson v. State, 761 So. 2d 324 (Fla. 2000), and the mailbox rule in Haag v. State, 591 So. 2d 614 (Fla. 1992). *See* Committee Notes, Fla. R. App. P., Rule 9.420. In Thompson,

the Court explained an inmate cannot prove a document was handed to prison officials in a timely fashion if the institution does not maintain the relevant outgoing mail information, and therefore "inmates are placed in a 'Catch-22' situation due to no fault of their own." 761 So. 2d at 326. In Haag, the Court noted this "Catch-22" and cited to the United States Supreme Court opinion in Houston v. Lack:

> [P]risoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal.… Under the mailbox rule, a petition or notice of appeal filed by a pro se inmate is deemed filed at the moment in time when the inmate loses control over the document by entrusting its further delivery or processing to agents of the state.

591 So. 2d 614, 617 (Fla. 1992) (citing Houston v. Lack, 487 U.S. 266, 270 (1988)). The mailbox rule was designed to mirror the principles of "simplicity and fairness" upheld by the Florida Constitution. *See* Haag, 591 So. 2d at 616; *see also* Art. I, § 13 Fla. Const. The pro se petitioner cannot be unfairly prejudiced when a petition is delayed by neglect from the United States Postal Service or prison authorities. *See* Houston v. Lack, 487 U.S. 266, 276 (1988) ("[T]he prison's failure to act promptly cannot bind a *pro se* prisoner, relying on receipt in this context would raise yet more difficult to resolve questions whether the prison authorities were dilatory.")

   Petitioner was in a "Catch-22 situation" in this case. Petitioner was required to file his legal mail through Union Correctional Institution's legal

Case No. 3:17cv367-MCR/CAS

mail system and rely on correctional officials to mail his petition in a timely manner. See Fla. Admin. Code R. 33-210.102 ("Inmates shall present all outgoing legal mail unsealed to the mail collection representative to determine, in the presence of the inmate, that the correspondence is legal mail."). Petitioner has shown that he acted diligently by filing a timely appeal on March 26 and in complying with the district court's order to show cause for untimeliness in two motions for rehearing. See Exs. M, N, and O. Indeed, common sense dictates that for the clerk of court to have date-stamped the notice as received on March 31, 2015, Petitioner had to have mailed it before that date—and the appeal period expired the day before, so he had to have timely submitted the notice of appeal for mailing from UCI. UCI's failure to stamp the appeal is an extraordinary circumstance beyond Petitioner's control. Had UCI stamped the notice of appeal, Petitioner's appeal likely would have been considered timely by the First DCA and the time during the pendency of his appeal would have tolled. Petitioner has met the requirements for equitable tolling and his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is timely.

## **RECOMMENDATION**

Therefore, it is respectfully **RECOMMENDED** that Respondent's motion to dismiss, ECF No. 17, be **DENIED**, Respondent be directed to file

an Answer to the § 2254 petition within thirty (30) days of entry of the order adopting this recommendation, and Petitioner be directed that he may file a Reply within thirty (30) days after service of the Answer.

      **IN CHAMBERS** at Tallahassee, Florida, on June 18, 2018.

                      <u>**S/ Charles A. Stampelos**</u>
                      **CHARLES A. STAMPELOS**
                      **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report or Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.